IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON  DIVISION

United States Courts
Southern District of Texas
FILED

FEB - 4 2005

Michael N. Milby, Clerk of Court

| | | |
|---|---|---|
| *JohnNelson* | § | |
| | § | |
| *v.* | § | C.A. H-05-0294 |
| | § | |
| *MGM Grand Hotel, L.L.C., et al,* | § | |

## DEFENDANTS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION OR, ALTERNATIVELY, MOTION TO TRANSFER VENUE

Defendants MGM Grand Hotel, L.L.C. ("MGM Grand"), MGM Grand Resorts, L.L.C. ("MGM Resorts"), and MGM MIRAGE ("MGM MIRAGE") (collectively "Defendants") hereby move to dismiss this action for lack of personal jurisdiction pursuant to Rule 12(b)(2), or alternatively, move to transfer venue to the District of Nevada pursuant to 28 U.S.C. § 1404(a).

The events that give rise to this action all occurred in Las Vegas, Nevada. Plaintiff John Nelson ("Nelson") nonetheless filed this lawsuit in Texas, and makes the assertion that each Defendant is subject to "general jurisdiction" in the State of Texas, but provides no details regarding how any Defendant has regularly conducted business in Texas. In fact, the complete opposite is true. As shown more fully below, none of the Defendants have any substantial contact in Texas to warrant this Court's jurisdiction over it. Because the maintenance of this suit in Texas would offend the "traditional notions of fair play and substantial justice," this action should be dismissed pursuant to Fed. R. Civ. P. 12(b)(2).

Alternatively, this action should be transferred to the District Court of Nevada under 28 U.S.C. § 1404(a). The balance of convenience and fairness heavily favors the adjudication of this matter in Nevada. All events underlying this action occurred in Nevada. The contract at issue is governed by Nevada law and was executed there. Additionally, all of the evidence and

witnesses, with the exception of Nelson himself, are located in Nevada. Thus, the costs of litigation will be considerably less for all of the parties if the case is transferred to Nevada. For these reasons, basic fairness and convenience dictate if this action is not dismissed on personal jurisdiction grounds, it should be transferred.

## I.   FACTS

### A.   Nelson is a common visitor to Las Vegas.

Nelson is an experienced gambler.  He claims to have traveled from Houston to Las Vegas "more than seventy-five times during the past ten years to stay and play at the MGM Grand Casino." (Nelson's Original Petition ¶ 10).  His visit to MGM in January of 2004 is the subject of this lawsuit. Specifically, Nelson claims that during a trip on January 30, 2004, he deposited a cashier's check in the amount of $90,000 in an MGM deposit account. *Id.* ¶ 12.

Allegedly on January 30, 2004, Nelson won "significant amounts of money" gambling. *Id.* ¶ 13.  According to Nelson, he then told MGM to wire transfer $125,000 "from his Casino deposit account to his bank in Houston." *Id.* ¶ 15.  Nelson agrees that this was done.  *Id.*

Days later, on February 4 and 5, 2004 respectively, Nelson claims that he won even more money and requested MGM to wire transfer an additional $235,000 to his Houston bank. *Id.* ¶ 16. However, Nelson alleges that he still had $200,000 "remaining in his Casino deposit account." *Id.*

According to Nelson, on February 6, 2004, he was told by MGM personnel that these wire transfers had not yet been executed "and the $235,000 remained in the MGM Grand Casino's possession." *Id.* ¶17. Nelson claims that "[o]nce informed that the $235,000 was still in the MGM Grand Casino's possession and available to him for continued playing, Plaintiff requested the money, which he subsequently lost." *Id.* ¶ 18.

Nelson blames MGM Grand for his gaming losses, claiming it knew that if he was given the money, he would play until he had lost it all. *Id.* According to Nelson, it was thus improper for MGM Grand to give him access to his own funds. Nelson also alleges that he was improperly denied "comps," in violation of a Nevada Gaming Commission Regulation. *Id.* ¶¶ 20-22.

### B.    Nelson complains to the Nevada gaming regulators.

Based upon these events, Nelson filed a Complaint with the Nevada State Gaming Control Board. NRS § 463.362(1) explains that if a gaming licensee and a patron, like Nelson, "have any dispute after the alleged winnings, alleged losses or the manner in which a game is conducted, . . . [t]he board, through an agent, shall conduct whatever investigation it deems necessary and shall determine whether payment should be made." Pursuant to that statute, the Board opened a case, Case #2004-7583-LV, and investigated the matter through David J. Salas, Supervisor of the Enforcement Division, as well as the Board's agent, Shirley Paris. (Ex. C3). That investigation concluded that MGM Grand had not violated any regulations, and they concluded that Nelson's claims were unfounded.

Rather than pursue this matter in Nevada, which Nelson knows to be the appropriate forum, he filed this action in Texas, essentially repeating the same complaints he made to the Nevada State Gaming Control Board. Although he had the statutory right to appeal that determination under NRS Section 463.363, he did not.

## II.    ARGUMENT

It is clear from Nelson's Original Petition that all events giving rise to this case occurred in Las Vegas, Nevada. This is precisely why Nelson does not and cannot claim the Court has specific jurisdiction here; this lawsuit does not arise from any purported contacts in Texas. On

the contrary, Nelson's claims all relate to alleged wrongs committed in Nevada, a purported breach of a Nevada contract, and alleged violations of Nevada gaming regulations.

Since specific jurisdiction is plainly lacking, Nelson resorts to the bold and unsubstantiated assertion that Defendants "are subject to the general jurisdiction of the State of Texas as they regularly conduct business in Texas and have a continuous and systematic business presence here." (Nelson's Original Petition ¶ 4). As shown more fully below, none of the Defendants have sufficient contacts in Texas to establish general jurisdiction. But even if jurisdiction existed, the facts and circumstances giving rise to the claim, all relate to and occurred in Nevada, and concern Nevada law and its gaming regulations. Thus, at a minimum, this case should be transferred to the District of Nevada.

### A.   Nelson Has Alleged No Facts Supporting Specific Jurisdiction.

Federal courts recognize that there are two types of jurisdiction: specific or general. To establish specific jurisdiction, "the defendant must have purposefully directed his activities at the resident of the forum, and *the litigation must result from the alleged injuries that 'arise out of or relate to' the defendant's activities directed at the forum*." *Gardemal v. Westin Hotel Co.*, 186 F.3d 588, 595 (5th Cir. 1999) (citation omitted) (emphasis added). It is clear from Nelson's Original Petition that all events giving rise to this case occurred in Las Vegas, Nevada. This is precisely why Nelson does not and cannot claim the Court has specific jurisdiction here; this lawsuit does not arise from any purported contacts in Texas. On the contrary, Nelson's claims all relate to alleged wrongs committed in Nevada, a purported breach of a Nevada contract, and alleged violations of Nevada gaming regulations.

Moreover, the allegations in his Original Petition simply do not support specific jurisdiction. Nelson claims MGM Grand called him in January 2004 to play at the hotel "over

Super Bowl weekend." (Plaintiff's Original Petition ¶ 9). Even assuming this allegation to be true, the law is clear that mere telephone calls to the plaintiff cannot support specific jurisdiction. *See, e.g., Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773, 778 (5th Cir. 1986) (finding that exchange of communications "in the course of developing and carrying out the contract" was insufficient to constitute "purposeful availment" because such communications "rested on nothing but the 'mere fortuity' that the plaintiff was a Texas resident."); *Patterson v. Dietze, Inc.*, 764 F.2d 1145, 1147 (5th Cir. 1985) (holding numerous telephone calls from the defendant to the forum were insufficient to support specific jurisdiction); *see also Tuscano v. Osterberg*, 82 S.W.3d 457, 470 (Tex. App—El Paso 2002) ("[T]elephone calls and correspondence as activities directed at the forum state are generally insufficient to confer personal jurisdiction.").

**B.      No General Jurisdiction Exists Because Defendants Do Not Have "Substantial," "Continuous," Or "Systematic" Contacts With Texas.**

The exercise of general jurisdiction over a non-resident defendant is appropriate only where the defendant's activities in the forum state are so "substantial" or "continuous and systematic" that the defendant may be deemed present in the forum. *Helicopteros Nacionales De Columbia S.A. v. Hall*, 446 U.S. 408, 415 (1984). "The residency of a defendant in the forum state routinely creates such systematic and continuous contact." *Religious Technology Center v. Liebreich*, 339 F.3d 369, 374 (5th Cir. 2003). Additionally, "general jurisdiction can be assessed by evaluating contacts of the defendant with the forum over a reasonable number of years, up to the date the suit was filed." *Access Telecom, Inc. v. MCI Telecomm. Corp.*, 197 F.3d 694, 717 (5th Cir. 1999). Since general jurisdiction requires a showing that the defendant conducted substantial activities within the forum, it requires a far more demanding minimum contacts analysis than for specific jurisdiction. *Gardemal v. Westin Hotel Co.*, 186 F.3d 588, 595 (5th Cir. 1999).

Under Fifth Circuit law, "[w]hen personal jurisdiction is challenged, the plaintiff 'bears the burden of establishing the district court's jurisdiction over the defendant.'" *Quick Technologies, Inc. v. Sage Group PLC*, 313 F.3d 338, 343 (5th Cir. 2002) (citation omitted). "When a court rules on a motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, it must accept as true the uncontroverted allegations in the complaint and resolve in favor of the plaintiff any factual conflicts." *J.R. Stripling v. Jordan Prod. Co., LLC.*, 234 F.3d 863, 869 (5th Cir. 2000) (citation and quotation omitted). Therefore, "the plaintiff need only present a prima facie case of personal jurisdiction to satisfy its burden." *Id.* Nelson, however, cannot meet this burden here.

Notwithstanding Nelson's failure to plead any allegations that suggests the Defendants have in fact engaged in systematic or continuous business in Texas, the facts show the opposite. As established by the affidavits of Thomas Peterman and Bryan Wright, none of the Defendants has sufficient minimum contacts in Texas to justify the exercise of general jurisdiction over them. The Defendants are not and never have been residents of Texas. (Affidavit of Thomas A. Peterman, ¶ 3, attached hereto as Ex. A; Affidavit of Bryan L. Wright, ¶ 4, attached hereto as Ex. B).

None of the Defendants maintains an office, mailing address, or telephone number in Texas and are not required to maintain, do not maintain, and have never maintained a registered agent for service of process in Texas. (Peterman Aff. ¶¶ 3-4; Wright Aff. ¶¶ 4-5). Moreover, none of the Defendants maintains a place of business in Texas nor do they have any employees working for them in Texas. (Peterman Aff. ¶ 5; Wright Aff. ¶ 6). As such, none of the Defendants are registered or authorized, and have never been registered or authorized, to do

business in Texas and they have not filed any Articles of Incorporation with the State of Texas. (Peterman Aff. ¶¶ 7, 9; Wright Aff. ¶¶ 8, 10).

Additionally, none of the Defendants has ever held a board of directors, officers, or other such meetings in Texas. (Peterman Aff. ¶ 6; Wright Aff. ¶ 7).  They also do not own any stock in Texas, do not have any bank accounts in Texas, and have never paid any income or property taxes in Texas. (Peterman Aff. ¶ 8; Wright Aff. ¶ 9). Simply stated, Defendants do not engage in business in Texas. Therefore, Texas cannot assert general jurisdiction over the Defendants. *See J.D. Fields & Co., Inc. v. W.H. Streit, Inc.*, 21 S.W.3d 599, 602 (Tex. App.—Houston [1st Dist.] 2000, no pet.) (finding no general jurisdiction where defendant company "is not licensed to do business in Texas, does not maintain a registered agent for service of process in Texas, does not own or lease property in Texas . . . [and] has never had any offices, employees, mailing addresses, or telephone listing in Texas.").

Finally, the Texas Court of Appeals has already determined that Texas does not have general jurisdiction over the MGM Grand Hotel.  In *MGM Grand Hotel, Inc. v. Castro*, 8 S.W.3d 403 (Tex. App.—Corpus Christi, 1999, no pet.), the plaintiff brought suit against MGM for injuries allegedly sustained at MGM's hotel.  After MGM entered its special appearance, the plaintiff claimed that MGM had "continuous and systematic contacts with Texas by advertising in various magazines to lure Texas residents to its hotel and offering promotions and otherwise encouraging companies to sell tickets for events at the hotel to Texas residents." *Id.* at 406.  The trial court denied MGM's special appearance. *Id.*

In support of its special appearance, MGM submitted an affidavit containing nearly the same facts submitted in the affidavits of Thomas Peterman and Bryan Wright, including that MGM is not a Texas entity that maintains any office, residence, or place of business in Texas.

*Id.* Specifically, in finding that the trial court erred in denying the special appearance, the Court concluded:

> MGM's corporate officer testified that MGM has never filed its articles of incorporation in Texas with the Secretary of State, has not designated an agent in Texas for service of process, did not own any real or personal property in Texas, lease or maintain any office, residence or place of business in Texas, nor own any stock or have any bank accounts in Texas, and has never paid any income or property taxes in Texas. *On these facts, we cannot conclude that MGM has the type of continuous and systematic contacts necessary for the exercise of general jurisdiction.*

*Id.* at 412 (emphasis added).  Accordingly, the Court reversed the trial court's decision and dismissed the action for lack of personal jurisdiction.

Here, Defendants have submitted essentially the same set of facts that the Texas Court of Appeals found could not support the exercise of general jurisdiction over MGM. (Peterman Aff. ¶¶ 3-10; Wright Aff. ¶¶ 4-11). Defendants respectfully ask this Court to do the same.  There is no basis for general jurisdiction and this lawsuit should be dismissed for lack of personal jurisdiction.

## C.   Alternatively, Venue Should Be Transferred To The District Of Nevada.

Even if this Court had personal jurisdiction, this matter should be transferred to the District of Nevada.  Under 28 U.S.C. ¶ 1404(a), a district court may transfer any civil action to any other district where it might have been brought "[f]or the convenience of parties and witnesses" and "in the interest of justice."  Under Fifth Circuit jurisprudence, "[t]he determination of 'convenience' turns on a number of private and public interest factors, none of which are given dispositive weight." *In Re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004).

The "private concerns" factors include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the

cost of attendance for willing witnesses; and (4) all other practical problems that make the trial of a case easy, expeditious, and inexpensive." *Id.*

With respect to the "public concerns," the factors include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflicts of laws of the application of foreign law." *Id.* As shown below, all of these factors favor transfer of this action.

### 1. The private concerns, especially the availability of witnesses, favor transfer.

Nelson's Original Petition concedes that the operative facts all occurred in Las Vegas, Nevada. Thus, it is not surprising that all non-party witnesses, and all witnesses from the MGM Grand, reside in Clark County, Nevada. Again, Nelson filed a complaint with the Nevada Gaming Control Board in which he alleged MGM Grand intentionally delayed, failed, and refused to wire money out of his account. (Affidavit of Mark J. Whitmore, ¶ 5; attached hereto as Ex. C; *see also* Ex. C2). And, the Gaming Control Board issued its findings and concluded that "[t]he facts and circumstances of the case could not substantiate your complaints or allegation." (Whitemore Aff. ¶ 6; *see also* Ex. C3). The Gaming Control Board further determined that MGM had complied with both federal and Nevada law governing wire transfers. *Id.*

Since the Gaming Control Board has already investigated Nelson's complaint that mirror the allegations contained in his Original Petition, their records will not only be germane to this lawsuit, but it is anticipated that at least three Gaming Control Board officials will be witnesses in this case. (Whitmore Aff. ¶ 7; Affidavit of Todd L. Bice, ¶¶ 3-4, attached hereto as Exhibit D). Obviously, this Court does not have compulsory process over these non-party witnesses.

Likewise, a great number of witnesses from MGM Grand are anticipated in this case. With respect to Nelson's January/February 2004 visit to MGM Grand, a minimum of eight MGM Grand employees had some involvement in Nelson's trip and his allegations. (Whitmore Aff. ¶ 8; Bice Aff. ¶ 5). Additionally, it is clear from the face of Nelson's Original Petition that he believes his "long-established history" at MGM Grand is relevant to his claims. (*See* Nelson's Original Petition ¶¶ 10, 11, 18). Since 1999, at least twelve additional MGM Grand employees have interacted with Nelson and have knowledge regarding his prior gaming history at the MGM Grand. (Whitmore Aff. ¶ 9; Bice Aff. ¶ 6). Thus, approximately twenty MGM Grand employees can be anticipated as testifying.

Obviously, the great "cost of attendance for willing witnesses," along with the overall expenses of maintaining this suit in Texas, demonstrate that venue should be transferred. This is especially true since the only non-Nevada witness is Nelson himself, and as he readily admits, is a frequent traveler to Las Vegas, going there multiple times each year.

### 2.   The public concern also weighed heavily in favor of transfer to the District of Nevada.

Not only do other witnesses and evidence germane to this action exist in Nevada, Nevada law obviously governs this dispute. The marker authorization limit agreement that Nelson executed on January 30, 2004, in Nevada states:

> *I agree that Nevada law exclusively governs the terms of . . . advances or credit instruments*.  I agree that the MGM Grand may litigate any dispute involving . . .the debt, or the payee in any court, state or federal, in Nevada. I submit to the jurisdiction of any court, state or federal, in Nevada.

(Whitmore Aff. ¶ 3; *see also* Ex. C1) (emphasis added). Therefore, Nevada law unquestionably governs Nelson's breach of contract claim.[1] *See, e.g., Resolution Trust Corp. v. Northpark Joint Venture*, 958 F.2d 1313, 1318 (5ᵗʰ Cir. 1992) ("Under Texas rules, in those contract cases in which the parties have agreed to an enforceable choice of law clause, the law of the chosen state must be applied.").

Similarly, Nevada law governs Nelson's tort claims because the alleged wrongs and omissions all transpired in Las Vegas, Nevada, in January and February 2004. (Plaintiff's Original Petition ¶¶ 9-24). Under Texas law, "the 'most significant relationship' test is applied to cases sounding in tort." *Blanchard v. Praxair, Inc.*, 951 F.Supp. 631, 634 (S.D. Tex. 1996). Thus, "the court looks not to the number of contacts in each state, 'but more importantly on the qualitative nature of those contacts.'" *Id.* (citation omitted); *see also Hines v. Tenneco Chemicals, Inc.*, 546 F.Supp. 1229, 1232 (S.D. Tex. 1982) ("[I]n choosing between the laws of [Nevada] and Texas, this court will apply the substantive law of the jurisdiction having the most significant relationship to the case sub judice."). Clearly, the most significant contacts all occurred in Nevada, when Nelson traveled there and claims MGM Grand committed a host of assorted wrongs against him.

Furthermore, even Nelson acknowledges that Nevada law governs this matter, as he specifically cites Nevada law in support of his claims of negligence and denial of comp benefits, and filed a complaint with the Gaming Control Board against MGM Grand. (Nelson's Original Petition ¶¶ 27, 53; Ex. C2 & C3).

---

[1]     Nevada law also governs the alleged "oral contracts" Nelson claims were entered while he stayed at the MGM Grand (Plaintiff's Original Petition ¶ 37), because they necessarily would have been negotiated, executed, and performed in Nevada. *See, e.g., Godchaux v. Conveying Techniques, Inc.*, 846 F.2d 306, 314 (5ᵗʰ Cir. 1988) ("Here, the contact was executed and signed in [Nevada], and the law of that state accordingly governs its construction and application").

The fact that Nevada law will govern is quite significant because Nevada has long established a comprehensive administrative mechanism for dealing with disputes between casinos and its customers as to alleged gaming losses and winnings. As the Nevada Supreme Court said long ago in *Weisbroad v. Fremont Hotel, Inc.*, 326 P.2d 1104, 1105 (Nev. 1958), "while protection of the courts is not afforded a gaming patron, he does have an administrative protection through regulation of gambling . . . . This reference to such protection it may well be, by the very nature of disputes such as that here involved, that the factual truth can, with justice to both, dispute these, more expertly and truly be ascertained through administrative inquiry than through a judicial one." Not surprisingly, Nevada has developed a long line of case law dealing with this issue. *Sengel v. IGT*, 2 P.3d 258, 260 (Nev. 2000); *Sea Air Support, Inc. v. Herrmann*, 613 P.2d 413, 414 (Nev. 1980).

And, of course, a court based in Nevada certainly has a much greater interest in determining whether specific Nevada gaming laws were violated and whether fraud, negligent misrepresentation, conversion in the other torts Nelson alleges were committed in Nevada. Moreover, Texas is less likely to have any "local interest" in Nelson's claims about being denied "comp" benefits and "discount opportunities" that a Nevada court, since gaming is Nevada's life blood. Plainly then, the "public concern" factors clearly favor transfer to Nevada.

No doubt, Nelson will seek to avoid all of the obvious benefits having this case in Nevada by claiming that his choice of forum should be afforded great deference. However, the law is to the contrary under these circumstances. Indeed, "[i]t is clear under Fifth Circuit precedent that the plaintiff's choice of forum is clearly a factor to be considered *but in and of itself it is neither conclusive nor determinative*." *In Re Horseshoe Entertainment*, 337 F.3d 429, 434 (5th Cir. 2003). Specifically, when "*none of the operative facts occur within the forum of*

*original selection, the plaintiff's choice is entitled to only minimal consideration.*" *Morgan v. Illinois Central Railroad Co.*, 161 F.Supp. 119, 120 (S.D. Tex. 1958) (emphasis added). As demonstrated above, Nelson's choice of forum should be afforded minimal weight, since all of operative facts underlying this lawsuit occurred in Las Vegas, Nevada.

In sum, it cannot be disputed that the costs of litigation will be significantly less in Nevada than Texas. The witnesses (including all non-party witnesses) and evidence are located in Nevada. Equally important, justice clearly warrants a transfer as Nelson traveled to Nevada and negotiated and executed the contract(s) he now claims Defendants breached. For these reasons, a transfer of venue to the District of Nevada should be granted.

## III.   CONCLUSION

Because this action stems from transactions and alleged wrongs that all occurred in Nevada, and because none of the Defendants have had any systematic, substantial, or continuous contacts in Texas, Nelson cannot establish specific or general jurisdiction. Therefore, this lawsuit should be dismissed for lack of personal jurisdiction.

Alternatively, venue should be transferred to the District of Nevada. Such a transfer would produce a net increase of convenience for both parties as most of the party and non-party witnesses are located in Nevada. Therefore, the costs of litigation will be substantially reduced. The interests of justice also favor a transfer because Nelson traveled to Nevada and executed a series of transactions that underlie this suit. As such, he should have reasonably anticipated that an action arising from his contacts in Nevada would be adjudicated in a Nevada courtroom. And, it cannot be disputed that Nevada law will govern this case.

For these reasons, Defendants respectfully request the Court dismiss this action for lack of personal jurisdiction, or alternatively, transfer venue to Nevada.

Respectfully submitted,

**GIBBS & BRUNS, L.L.P.**

By: _____
Jeremy L. Doyle
State Bar No. 24012533
GIBBS & BRUNS, LLP
1100 Louisiana, Suite 5300
Houston, Texas 77002
Telephone: (713) 650-8805
Facsimile: (713) 750-0903
**ATTORNEY IN CHARGE FOR DEFENDANTS
MGM GRAND HOTEL, L.L.C., MGM
GRAND RESORTS, L.L.C., AND MGM
MIRAGE**

Of Counsel:

Brian T. Ross
State Bar No. 24037395
GIBBS & BRUNS, LLP
1100 Louisiana, Suite 5300
Houston, Texas 77002
Telephone: (713) 650-8805
Facsimile: (713) 750-0903

Todd L. Bice
SCHRECK BRIGNONE
Las Vegas, Nevada 89101
Telephone: (702) 382-2101
Facsimile: (702) 382-8135

## **CERTIFICATE OF SERVICE**

A true and correct copy of the foregoing was sent on the 4th day of February, 2005, to the following:

> *Via Fax and Certified Mail (713) 953-9470*
> Katherine T. Mize
> Brenton J. Allison
> Legge, Farrow, Kimmitt, McGrath & Brown, L.L.P.
> 6363 Woodway, Suite 400
> Houston, Texas  77057

Jeremy Doyle

TAB   A

02/04/2005 14 06 FAX 7023828135          SCHRECK BRIGNONE                    ☑002/006

Feb-04-05   01:38pm   From-MGM GRAND LEGAL EXECUTIVE OFFICES        +7026917830      T-025   P.002/006   F-727

STATE OF NEVADA      §
                            §
COUNTY OF CLARK     §

Thomas A. Peterman, being first duly sworn, states as follows:

1.     I am the Senior Vice President and General Counsel of MGM Grand Hotel, LLC ("MGM Grand"), one of the named defendants in the above-captioned cause. In my position, I have personal knowledge of the nature of MGM Grand's business activities and of MGM Grand's contacts with particular states, including, but not limited to, the State of Texas. The facts stated herein are within my personal knowledge and are true and correct, and I could and would competently testify to such facts if called as a witness to do so. I make this Affidavit in support of Defendants' Motion To Dismiss For Lack Of Personal Jurisdiction, Or Alternatively, Motion To Transfer Venue.

2.     MGM Grand is a Nevada Limited Liability Company with its principal place of business at 3799 Las Vegas Blvd South, Las Vegas, Nevada, 89109. MGM owns and operates the MGM Grand Hotel/Casino (the "Hotel"). Prior to January 1, 2001, the MGM Grand Hotel, Inc. owned and operated the Hotel. Effective as of January 1, 2001, MGM Grand merged with MGM Grand Hotel, Inc., with MGM Grand being the surviving entity. This merger involved two affiliated entities and was completed for the purpose of owning and operating the Hotel as a limited liability company rather than a corporation. The testimony provided in this Affidavit apply to both MGM Grand and MGM Grand Hotel, Inc., the previous owner of the Hotel.

3.     MGM Grand has no substantial contact with Texas. MGM Grand is not and never has been a resident of Texas. MGM Grand is not required to maintain, does not maintain, and never has maintained a registered agent for service of process in Texas.

4.     MGM Grand does not maintain an office, mailing address, or telephone number in Texas.

5.     MGM Grand does not maintain a place of business in Texas and does not have any employees working for it in Texas.

6.     MGM Grand has never held a board of directors, officers, or other such meetings in Texas.

7.     MGM Grand is not registered or authorized, and never has been registered or authorized to do business in Texas.

8.     MGM Grand does not own any stock in Texas, does not have any bank accounts in Texas, does not own any real property in Texas, and has never paid any income or property taxes in Texas.

9.     MGM Grand has not filed any Articles of Incorporation with the State of Texas.

DATED this _____ day of February, 2005.

THOMAS A. PETERMAN

Subscribed and sworn to
before me this ____ day of February, 2005.

Notary Public

KIMBERLEE ANN INIGUEZ
Notary Public State of Nevada
No. 92-0654-1
My appt. exp. May 31, 2008

TAB    B

STATE OF NEVADA      §
                              §
COUNTY OF CLARK     §

Bryan L. Wright, being first duly sworn, states as follows:

1.    I am the Vice President, Assistant General Counsel, and Assistant Secretary of MGM MIRAGE ("MGM MIRAGE"), one of the named defendants in the action styled *John Nelson v. MGM Grand Hotel, L.L.C., et. al..* In my position as Vice President, Assistant General Counsel, and Assistant Secretary, I have personal knowledge of the nature of MGM MIRAGE's and MGM Grand Resorts, L.L.C.'s ("MGM Resorts") business activities and of MGM MIRAGE's and MGM Resorts' contacts with particular states, including, but not limited to, the State of Texas. The facts stated herein are within my personal knowledge and are true and correct, and I could and would competently testify to such facts if called as a witness to do so. I make this Affidavit in support of Defendants' Motion To Dismiss For Lack of Personal Jurisdiction, Or Alternatively, Motion To Transfer Venue.

2.    MGM MIRAGE is a Delaware corporation, with its principal place of business in Las Vegas, Nevada. It is a publicly traded corporation on the New York Stock Exchange. MGM MIRAGE is licensed by the Nevada Gaming Commission as a holding company and it does not itself own or operate any hotel or gaming property. Accordingly, MGM MIRAGE does not own or operate the MGM Grand Hotel/Casino (the "Hotel"), and has no involvement in the day to day operations of the Hotel.

3.    MGM Resorts is a Nevada Limited Liability Company with its principal place of business in Las Vegas, Nevada. MGM Grand Resorts is licensed by the Nevada Gaming Commission as an intermediary holding company, and it owns all of the stock of

MGM Grand Hotel, LLC ("MGM Grand"). Like MGM MIRAGE, MGM Resorts does not operate the Hotel, and has no involvement or control over the day to day operations.

4.    MGM MIRAGE and MGM Resorts have no substantial contact with Texas. MGM MIRAGE and MGM Resorts are not and never have been a resident of Texas. MGM MIRAGE and MGM Resorts are not required to maintain and do not maintain a registered agent for service of process in Texas.

5.    MGM MIRAGE and MGM Resorts do not maintain an office, mailing address, or telephone number in Texas.

6.    MGM MIRAGE and MGM Resorts do not maintain a place of business in Texas and do not have any employees working for them in Texas.

7.    MGM MIRAGE and MGM Resorts have never held a board of directors meeting in Texas, and to the best of my knowledge, have never held a meeting of its officers, or other such meetings in Texas.

8.    MGM MIRAGE and MGM Resorts are not registered or authorized to do business in Texas.

9.    MGM MIRAGE and MGM Resorts do not own any stock in Texas, do not have any bank accounts in Texas, do not own any real property in Texas, and have never paid any income or property taxes in Texas.

///

///

///

///

///

10.    MGM MIRAGE and MGM Resorts have not filed any Articles of Incorporation with the State of Texas.

DATED this ___ day of February, 2005.

BRYAN L. WRIGHT

Subscribed and sworn to
before me this 4th day of February, 2005.

Katherine M Smith
Notary Public

KATHERINE M. SMITH
Notary Public State of Nevada
No. 99-33590-1
My appt. exp. June 28, 2006

TAB   C

02/04/2005 14 06 FAX  7023828135          SCHRECK BRIGNONE                                    ☑004/006

Feb-04-05   01:38pm   From-MGM GRAND LEGAL EXECUTIVE OFFICES          +7028917830          T-025  P.004/006  F-787

STATE OF NEVADA          §
                         §
COUNTY OF CLARK          §

Mark J. Whitmore, being first duly sworn, states as follows:

1.      I am the Vice President of Cage, Credit, and Collections at MGM Grand Hotel, L.L.C. ("MGM Grand"), one of the named defendants in the action styled *John Nelson v. MGM Grand Hotel, L.L.C., et. al.* The facts stated herein are within my personal knowledge and are true and correct, and I could and would competently testify to such facts if called as a witness to do so. I make this Affidavit in support of Defendants' Motion To Dismiss For Lack of Personal Jurisdiction, Or Alternatively, Motion To Transfer Venue.

2.      On January 30, 2004, Plaintiff John Nelson ("Nelson") executed a "marker authorization limit" agreement in Las Vegas, Nevada. Attached to my affidavit as Exhibit 1 is a true and correct copy of that agreement.

3.      The "marker authorization limit" agreement contains the following clause above Mr. Nelson's signature: "I agree that Nevada law exclusively governs the terms of . . . advances or credit instruments. I agree that the MGM Grand may litigate any dispute involving . . .the debt, or the payee in any court, state or federal, in Nevada. I submit to the jurisdiction of any court, state or federal, in Nevada."

4.      In February of 2004, I held a teleconference with Nelson, per his request, regarding his visit at the MGM Grand in late January and early February of 2004. Nelson was upset because he lost money gambling at the MGM Grand, and partially blamed the Hotel for his losses. Specifically, Nelson told me that he should not have asked for his money that was being maintained by MGM Grand (in an account under his name, to

which he alone had access, and for which he had been given a receipt). Still, he blamed
MGM Grand for giving him access to his money. Therefore, Nelson told me he believed
MGM Grand was partially at fault for his decision to gamble and lose money.

5.      On or about April 26, 2004, Nelson filed a complaint with the Nevada
Gaming Control Broad, in which he alleged that MGM Grand intentionally delayed,
failed, and refused to wire money out of his account. Nelson further alleged that MGM
Grand did this because it knew Nelson would gamble with any money that was available.
Attached to my affidavit as Exhibit 2 is a true and correct copy Nelson's complaint to the
Nevada Gaming Control Board.

6.      On or about May 27, 2004, the Nevada Gaming Control Board ("the
Gaming Control Board") sent Nelson its finding regarding his complaint.  The Gaming
Control Board determined that "[t]he facts and circumstances of the case could not
substantiate your complaints or allegation."  The Gaming Control Board further found
that MGM Grand complied with both federal and Nevada law governing wire transfers.
Attached hereto as Exhibit 3 is a true and correct copy of the Gaming Control Board's
May 27, 2004, decision.

7.      The following Gaming Control Board employees investigated and/or
participated in responding to Nelson's complaint: (1) David J. Salas, Supervisor of the
Enforcement Division in Las Vegas, Nevada; (2) Agent Shirley Paris; and (3) Lisa Kelly,
Senior Auditor.

8.      Prior to his complaint and in the process of responding to the Gaming
Control Board's inquiries regarding Nelson's complaint, I became familiar with those
MGM Grand employees who had interaction with Nelson during his visit in late January

and early February of 2004. In particular, the following MGM Grand employees have knowledge concerning the events underlying Nelson's allegations and his stay at the MGM Grand: (1) James White; (2) Jan Johnson; (3) Bryan Anderson; (4) Dan Napier; (5) Jennifer McEwin; (6) Jacquie Bailey; and (7) Lynda Smith. With the exception of Ms. Smith, all of these individuals still work for MGM Grand. Additionally, all of these individuals reside in the State of Nevada.

9.    Nelson alleges in his Original Petition that he traveled from Houston to Las Vegas more than seventy-five times during the past ten years to stay and gamble at the MGM Grand. Although I cannot possibly name every MGM Grand employee who might have had some interaction with Nelson, our records show the following employees had some involvement with Nelson and his prior gaming history at the MGM Grand since 1999: (1) Deborah Swick; (2) Michelle Wolf; (3) Pattie Haugen; (4) Candie Forrester; (5) Jane Wachtman; (6) Dale Baca; (7) Georgeanne Hess; (8) Arden Gilger; (9) Elizabeth Spenia; (10) Vicki Ryan; (11) Arnold Cope; (12) Neil Lewis. Upon information and belief, all of these individuals, with the exception of Ms. Wachtman, currently reside in the State of Nevada.

DATED this ⸻ day of February, 2005.

_Mark J. Whitmore_
MARK J. WHITMORE

Subscribed and sworn to
before me this ⸻ day of February, 2005.

_Janice Mazuroski_
Notary Public

NOTARY PUBLIC
STATE OF NEVADA
County of Clark
JANICE MAZUROSKI
Appt. No. 94-1997-1
My Appt. Expires Aug. 20, 2006

TAB 1

# MGM GRAND HOTEL/CASINO

**NAME**
NELSON JOHN

**STREET ADDRESS OF RESIDENCE**
1038 AUGUSTA DR

| CITY | STATE | ZIP CODE |
|---|---|---|
| HOUSTON | TX | 77057- |

| DATE OF BIRTH | SOCIAL SECURITY NO. | RESIDENCE PHONE |
|---|---|---|
| 8/12/45 | 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 | (281) 762-1670 |

**NAME OF EMPLOYER**
T. ENERGY SERVICES INC

**TYPE OF BUSINESS**
ENGINEERING

**POSITION WITH EMPLOYER**
Owner

| | BUSINESS PHONE |
|---|---|
| | (713) 757-1721 |

**STREET ADDRESS OF EMPLOYER**
611 DALLAS ST
STE 760

| CITY | STATE | ZIP CODE |
|---|---|---|
| HOUSTON | TX | 77002- |

**CREDIT REQUESTED**
$10,000.00

| | EMAIL ADDRESS |
|---|---|

**DATE OTHER MARKER PAID**

**PER CASINO HISTORY**

**APPLICATION RECEIVED** ☐ MAIL   ☐ WALK-IN   ☐ PHONE

| DATE | ARRIVAL DATE |
|---|---|
| 112466 | 1/30/04 |

**CUSTOMER #**
539003

**MARKETING REP.**

HOME / WORK CHECKING ACCOUNT(S)
**BANK / NAME**
SOUTHWEST BANK OF TEXAS

**BANK BRANCH**
MAIN

**BANK ADDRESS**

| CITY | STATE | ZIP CODE |
|---|---|---|
| HOUSTON | | HOUSTO |

**ACCT # PERSONAL**
5  46224

**ACCT # BUSINESS**

Before drawing on my line of credit, if granted, I agree to sign credit instruments (i.e. checks) in the amount of the draw. I authorize MGM Grand to complete any of the following missing items on these credit instruments: (1) the name of a payee, (2) any missing amounts, (3) a date, (4) the name, account number, and/or branch of any banks and financial institutions and (5) my electronic encoding of the above items. This information can be for any account from which I now have or may in the future have the right to withdraw funds, regardless of which or that account now exists, and whether I provided the information now or the account to MGM Grand.

I acknowledge that irrespective of any currency exchange fees in the country in which I reside, I have the ability and intent to legally repay any advance of money by the MGM Grand. I also acknowledge that an independent agent collecting from money deposits or payments on my debt is my agent and not an agent for MGM Grand or any of its affiliates.

I agree that each draw against my credit line is a separate advance of money by the MGM Grand. If I receive the advance before I execute a credit instrument, I promptly will sign a credit instrument in the amount of the advance.

I agree that Nevada law exclusively governs the terms of the credit line, advances, or credit instruments. I agree that the MGM Grand may allege any dispute involving that credit line, the debt, or the payee in any court, state or federal, in Nevada. I submit to the jurisdiction of any court, state or federal, in Nevada.

Besides any amounts authorized by law, I will pay interest at the rate of 18% per annum from the date of execution of the credit instruments until all costs of collection including attorneys' fees and court costs.

I agree that the information set forth above is true and accurate to the best of my knowledge.

**Signature**

MGM GRAND ENDORSES RESPONSIBLE GAMING. We will cancel or reduce your credit line upon your request. If you or anyone you know may have a problem gaming responsibly, please call 1-800-522-4700.

I give MGM Grand, and its representatives, permission to obtain and verify credit information from any source, obtain any credit and employment history, and exchange information with others about my credit and account experience with the MGM Grand. I agree not to hold any of these credits responsible or liable for the information released. I agree that the MGM Grand will retain this application whether or not it approves the credit line.

CASD100 (Rev. 12/03)

TAB 2



STATE OF NEVADA
GAMING CONTROL BOARD

**RECEIVED**
2004-0193
APR 2 6 2004

GCB LAS VEGAS
ENFORCEMENT DIV

# VOLUNTARY STATEMENT

I, _____John_____ _____T._____ _____Nelson_____
        First              Middle              Last

do hereby make the following voluntary statement on __04__ __26__ __2004__ at __9:00__ (AM)/PM
                                                    Month  Day   Year

See attached four (4) page letter, which
is hereby incorporated by reference

I have reviewed this statement of __6__ page(s) and believe it to be true and accurate to the best of my recollection.

_____Eric D. Nielsen_____
ERIC D. NIELSEN  Witness

_____John J. Nelson_____
Signature
4/26/04
Date

OVER →

Page __1__ of __6__ Pages

Home Address __1038  Angusta__

City __Houston__ State __TX__ ZIP __77057__

Phone No. __(713) 248-1750__ Social Security No. __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__ Date of Birth __8/12/49__

**GAMING PERSONNEL:**

Employer _____ Title _____ Police Card No. _____

COMPLETED FORM BECOMES THE PROPERTY
OF THE NEVADA STATE GAMING CONTROL BOARD
AND MAY NOT BE DISTRIBUTED WITHOUT PERMISSION

Nevada Gaming Commission
Complaint of John Nelson
4/26/2004
9:27 AM

Over the last several years, I have traveled from Houston to Las Vegas on many occasions to stay and gamble at the MGM Grand Casino. I have made my intent to self-limit my losses known to the MGM Grand Casino. I limit my losses to the money that I place on deposit and I never gamble on credit. I have specifically instructed the MGM Grand Casino never to extend me credit. When and if I lose the deposit to which I allow myself access, my trip is over and I return to Houston.

In late January 2004, the MGM Grand Casino invited me to Las Vegas to stay and gamble with there. The casino offered to pay for and did pay for my round trip air fare. The casino also offered to and did comp my stay in one of the MGM Grand Casino villas at the Mansion, reserved for favored patrons. Upon my arrival, the MGM Grand Casino gave me $10,000 in gambling chips in addition to the deposit I brought with me by cashier's check.

On January 30, 2004, I began gambling at the MGM Grand Casino. Over the next few days, I won large sums of money, which I placed on deposit with the MGM Grand Casino cage. While I continued to gamble I did not want to risk all of the money that had accumulated in my casino account. I instructed the MGM Grand Casino to wire transfer $125,000 from my account to my bank in Houston, Texas. I specifically advised the MGM Grand Casino that the purpose of the transfer was to reduce the money available for me to gamble with. This fact, placing self-limits on the money available to gamble, was already well known to the MGM Grand Casino due to its course of dealing with me over the last several years. The MGM Grand Casino duly executed my first wire transfer instruction.

Nevada Gaming Commission
Complaint of John Nelson
4/26/2004
9:27 AM

I continued to win and on Wednesday, February 4, 2004, I instructed the MGM Grand Casino to wire transfer an additional $120,000 to my bank in Houston. The MGM Grand Casino agreed to perform the second wire transfer as I instructed. On the morning of February 5, 2004, I instructed the MGM Grand Casino to wire transfer yet another $115,000, to my bank in Houston. The MGM Grand Casino agreed to perform the third wire transfer as I instructed. After the wiring instructions were given by me and accepted by the MGM Grand Casino on the morning of February 5, 2004, a substantial amount of money remained in my casino account.

Contrary to their agreements and representations to me, the MGM Grand Casino did not execute the second and third wire transfers per my instructions. Instead, the MGM Grand Casino unreasonably delayed, failed and refused to make the second and third wire transfers per my instructions. The MGM Grand Casino knew full well that I wanted to self-limit my access to money, but it anticipated and expected that I would continue to gamble with all of the money to which I had access, as I had done on many occasions in the past. Unfortunately for me, that is exactly what happened. During the afternoon of February 5th I returned to the casino and lost all of the money I knew to have on deposit. MGM Grand Casino employees at the gaming area confirmed the fact that I had withdrawn all of my remaining funds from my casino account, when I signed a marker for the balance of the money available to me.

On the morning of February 6th, I learned that the MGM Grand Casino had not sent either of the two wire transfers I had requested and that the entire $235,000 was available for me to gamble with. The $235,000 the MGM Grand Casino unreasonably

Nevada Gaming Commission
Complaint of John Nelson
4/26/2004
9:27 AM

delayed, failed and refused to wire transfer according to my specific instructions was put back into my account and I lost that money in the casino. The MGM Grand Casino intentionally destroyed my plan to self-limit my access to funds.

In my opinion the actions of the MGM Grand Casino are equivalent to fixing the odds of a game in their favor. The MGM Grand Casino retained the $235,000 in their possession and intentionally delayed transferring the $235,000 as they had agreed. The MGM Grand Casino knew I would gamble with any money that was available. Had the MGM Grand Casino carried out the wiring instructions they had agreed to, my effort to self-limit my funds would have allowed me to avoid the loss of $235,000. They did not send the wire transfers they agreed to because they placed there own interest ahead of my own even though they were acting as my agent. They made false representations and promises to me concerning making the wire transfers with the knowledge of their falsity and with the intent not to perform as represented and promised. The MGM Grand Casino intended for me to rely on those false representations and promises and I did rely on them to my detriment.

The MGM Grand Casino owed me the general duties any agent owes its principal, including a fiduciary duty to look to my interests instead of its own interests. Furthermore, the MGM Grand Casino owed me the specific duties owed by a financial institution to its customer including a fiduciary duty.

Further, I believe that the MGM Grand Casino's conduct constitutes a breach of their agreements, a breach of their fiduciary duties, and fraud. According to Regulation 6A.080 adopted by the Nevada Gaming Commission and State Gaming Control Board

Nevada Gaming Commission
Complaint of John Nelson
4/26/2004
9:27 AM

pursuant to the Nevada Gaming Control Act, the MGM Grand Casino, (a 6A licensee), is

also "a financial institution as described in 31 C.F.R. pt. 103. This section applies to

transmittals of funds in an amount that exceeds $3,000."

The Nevada Revised Statutes 104A.4302 sets forth the obligations of a financial

institution with respect to wire transfers and provides in pertinent part,

> If the sender's instruction states that the funds transfer is to be carried out
> telephonically or by wire transfer or otherwise indicates that the funds transfer is
> to be carried out by the most expeditious means, a receiving bank is obliged to
> transmit its payment order by the most expeditious available means, and to
> instruct any intermediary bank accordingly.

In other words, when I gave the MGM Grand Casino the instructions for the second and

third wire transfers mentioned above, the MGM Grand Casino was obliged by Nevada

law to "transmit its payment order by the most expeditious available means." Instead, the

MGM Grand Casino intentionally unreasonably delayed, failed and refused to make the

wire transfers, knowing full well that I would continue to gamble and put at risk all of the

money to which I had access.

I have left from Las Vegas many times with less money than I arrived with but

this time I left with the feeling I had been cheated. I therefore respectfully request that

you investigate the full details of this matter and the conduct of the MGM Grand Casino.

Very truly yours,

John J. Nelson

John J. Nelson
6038 Augusta
Houston, Texas 77057
Tel:        (713) 248-1750
SS#:       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
D.O.B.:    08/12/1949

TAB 3



STATE OF NEVADA
## GAMING CONTROL BOARD

1919 E. College Parkway, P.O. Box 8003, Carson City, Nevada 89702
555 E. Washington Ave., Suite 2600, Las Vegas, Nevada 89101
3650 South Pointe Cir., Suite 203, P.O. Box 31109, Laughlin, Nevada 89028
557 W. Silver St., Suite 207, Elko, Nevada 89801
6980 Sierra Center Parkway, Suite 120, Reno, Nevada 89511

DENNIS K. NEILANDER, *Chairman*
BOBBY L. SILLER, *Member*
SCOTT SCHERER, *Member*

KENNY C. GUINN
*Governor*

May 27, 2004

Las Vegas
(702) 486-2020
Fax: (702) 486-2230

Mr. John J. Nelson
1038 Augusta
Houston, Texas 77057

RE: CASE #2004-7583-LV
MGM GRAND HOTEL/CASINO

Dear Mr. Nelson:

The investigation of your wire transfer complaints and allegation of fraud filed against the MGM Grand Hotel/Casino on April 28, 2004, has been completed. The facts and circumstances of the case could not substantiate your complaints or allegation. My decision, therefore, is the MGM Grand Hotel/Casino acted with efficiency when it initiated your wire transfer requests. The MGM Grand Hotel/Casino complied with the requirements mandated by the U.S. Department of the Treasury's Code of Federal Regulations (C.F.R.) Title 31, part 103 and Nevada Gaming Commission (NGC) Regulation 6A.080.

Neither C.F.R. Title 31, part 103 nor NGC Regulation 6A.080 mandate a specific time frame in which wire transfers must be completed. Title 31 speaks only to completing the transfer by the most expeditious means available to the institution after it has met all of its record keeping and reporting requirements. NGC Regulation 6A.080 incorporates the requirements outlined in Title 31, part 103, as such it does not specify a time frame in which wire transfers must be completed.

You cited Nevada Revised Statute (NRS) 104A.4302 in your correspondence, alleging the MGM Grand Hotel/Casino violated the requirements contained therein with reference to your wire transfer requests. Please be advised that section of Nevada's legal code does not include casinos in its definition of banks, in spite of its inapplicability the statute does not mandate a time frame in which wire transfers must be completed.

NRS 205 defines the crime of fraud, pursuant to that definition and the actions of the MGM Grand Hotel/Casino in this matter, be advised there is absolutely no indication of criminal activity on the part of the location.

Mr. John J. Nelson
Case #2004-7583-LV
Page 2


       Because your complaints alleged unsuitable methods of operation, i.e., not gaming matters as defined by Nevada Revised Statutes, and they were subsequently determined to be unfounded the decision rendered in this investigation is not subject to review by a Hearing Examiner.

Sincerely,

David J. Salas, Supervisor
Enforcement Division - Las Vegas


BY:  S. PARIS, AGENT

DJS/SP:rs

Enclosure:  Certificate of Service

cc:  Gary N. Jacobs, MGM Mirage
     MGM Grand Hotel/Casino

TAB O

**AFFIDAVIT OF TODD L. BICE**

STATE OF NEVADA        )
                       ) ss.
COUNTY OF CLARK        )

I, Todd L. Bice, being first duly sworn, state as follows:

1.      I am an attorney at Schreck Brignone in Las Vegas, Nevada, and am counsel for MGM Grand Hotel, L.L.C., ("MGM Grand"), MGM Grand Resorts, L.L.C. ("MGM Resorts"), and MGM MIRAGE ("MGM MIRAGE") (collectively "Defendants"), the Defendants in the action styled *John Nelson v. MGM Grand Hotel, L.L.C., et. al.*. I make this affidavit in support of Defendants' Motion To Dismiss For Lack Of Personal Jurisdiction, Or Alternatively, Motion To Transfer Venue. I have personal knowledge of the facts stated herein and am competent to testify to those facts.

2.      In my capacity as Defendants' counsel in this matter, I have reviewed MGM Grand's files regarding Plaintiff John Nelson's ("Nelson") visit to MGM Grand in January and February 2004, Nelson's complaint to the Nevada Gaming Control Board ("the Gaming Control Board"), and MGM Grand's records concerning Nelson's prior gaming history at the MGM Grand Hotel and Casino ("the Hotel").

3.      There are multiple witnesses who had dealings with the facts and circumstances concerning Nelson's claim, including the non-party witnesses working for the Nevada State Gaming Control Board. These individuals are: (1) David J. Salas, Supervisor of the Enforcement Division in Las Vegas, Nevada; (2) Agent Shirley Paris; and (3) Lisa Kelly, Senior Auditor.

4.      Both Agent Paris and Ms. Kelly communicated with MGM Grand employees during the course of their investigation of Nelson's allegations. It is anticipated that if these individuals were called to testify as witnesses, they would testify as to their investigation, and the Gaming Control Board's ultimate disposition of Nelson's claim. Upon information and belief, Mr. Salas participated in both the investigation and the Gaming Control Board's findings, as he signed the May 27, 2004, letter to Nelson.

SCHRECK BRIGNONE
300 South Fourth Street
Suite 1200
Las Vegas, Nevada 89101
(702) 382-2101

5.     An additional eight individuals from MGM Grand are reasonably expected to testify in this case regarding Nelson's January and February 2004 visit at the Hotel, and his subsequent allegations. These individuals are: (1) Mark Whitmore; (2) James White; (3) Jan Johnson; (4) Bryan Anderson; (5) Dan Napier; (6) Jennifer McEwin; (7) Jacquie Bailey; and (8) Lynda Smith. Generally, the following summarizes the anticipated testimony from each of these witnesses:

(A)     Mr. Whitmore is expected to testify regarding his communications with Nelson regarding his allegations that MGM Grand acted improperly. These communications principally occurred in February of 2004. Mr. Whitmore also has knowledge regarding Nelson's prior visits to the Hotel since at least 2001.

(B)     Ms. Johnson is an assistant cage supervisor. On or about February 5, 2004, Ms. Johnson was involved in a transaction with Nelson, who asked her to deposit a certain amount of chips in an account maintained by the Hotel for him, and then asked Ms. Johnson to withdraw a large portion of money that he had just deposited.

(C)     Mr. White is a swing shift cage supervisor. Mr. White was involved with a wire transfer with Mr. Nelson on or about February 3, 2004. Nelson also interacted with Mr. White on February 4, 2004, in which he asked Mr. White for another wire transfer.

(D)     Mr. Anderson is a cage day shift supervisor. Mr. Anderson is expected to testify about his interaction with Nelson on or about February 6, 2004, when Nelson was settling his account at the Hotel  Mr. Anderson also has knowledge regarding Nelson's prior visits to the Hotel since at least 1999.

(E)     Mr. Napier is expected to testify regarding communications received from Nelson concerning his allegations. Mr. Napier also has knowledge regarding Nelson's prior visits to the Hotel since at least 1998.

(F)     Ms. McEwin is expected to testify regarding MGM Grand's response to Nelson's allegations that MGM Grand acted improperly. Ms. McEwin also has knowledge regarding Nelson's prior visits to the Hotel since at least 2002.

SCHRECK BRIGNONE
300 South Fourth Street
Suite 1200
Las Vegas, Nevada 89101
(702) 382-2101

- 2 -

1    (G)    Ms. Bailey is expected to testify regarding MGM Grand's response to

2    Nelson's claims that he is owed certain "comps" in August 2004.

3    (H)    Ms. Smith is expected to testify regarding Nelson's wire transfers on or

4    about February 6, 2004.

5    6.    Nelson also claims in his Original Petition that from his "long-established

6    history" at the Hotel, MGM Grand knew he "would play as long as he had money on deposit

7    with the Casino." (*See* Plaintiff's Original Petition ¶ 18). Since Nelson believes his prior

8    visits to the Hotel are germane to this lawsuit, it is likely that MGM employees (both past

9    and present) will be called to testify regarding his prior gaming history at the Hotel. At least

10    twelve additional individuals have knowledge of and can be expected to testify about

11    Nelson's gaming history at the Hotel since 1999:

12    (A)    Deborah Swick, who is expected to testify regarding Nelson's gambling

13    at the Hotel in September 2003;

14    (B)    Michelle Wolf, who is expected to testify regarding Nelson's gambling

15    at the Hotel in April 2003;

16    (C)    Pattie Haugen, who is expected to testify regarding Nelson's gambling

17    at the Hotel in October 2001;

18    (D)    Candie Forrester, who is expected testify regarding Nelson's gambling

19    at the Hotel July 2001 and March 2000;

20    (E)    Jane Wachtman, who is expected to testify regarding Nelson's request

21    in January 2001 for no future credit at the Hotel;

22    (F)    Dale Baca, who is expected testify regarding Nelson's gambling at the

23    Hotel in February and April 2000;

24    (G)    Georgeanne Hess, who is expected to testify regarding Nelson's

25    gambling at the Hotel in February 2000 and December 1999;

26    (H)    Arden Gilger, who is expected to testify regarding Nelson's gambling

27    at the Hotel in January and February 2000;

28

SCHRECK BRIGNONE
300 South Fourth Street
Suite 1200
Las Vegas, Nevada 89101
(702) 382-2101

- 3 -

1        (I)     Elizabeth Spenia, who is expected to testify regarding Nelson's gaming

2 history at the Hotel in February 1999;

3        (J)     Vicki Ryan, who is expected to testify regarding Nelson's gaming

4 history at the Hotel in January 1999;

5        (K)     Arnold Cope, who is expected to testify regarding Nelson's gambling

6 at the Hotel in September 2003;

7        (L)     Neil Lewis, who is expected to testify regarding Nelson's visit to the

8 Hotel in November 2001.

9     7.     In short, there are at least three non-party witnesses from the Gaming Control

10 Board that have knowledge pertaining to this dispute, as well as potentially twenty percipient

11 witnesses all located in Nevada which will have knowledge pertaining to Nelson's

12 allegations in this case. On the other hand, as far as MGM Grand's records indicate, the only

13 person in Texas having any knowledge of this would be Nelson himself.

14     DATED: February 4, 2005.

15

16               TODD L. BICE

17

18 Subscribed and sworn to
before me this ___th day of

19 February, 2005.

20

21 Notary Public

22

23

24

25

26

27

28

SCHRECK BRIGNONE
300 South Fourth Street
Suite 1200
Las Vegas, Nevada 89101
(702) 382-2101

SHAYNA ORTEGA-ROSE
NOTARY PUBLIC
STATE OF NEVADA
Date Appointment Exp: 09-28-2005
Certificate No:01-70997-1