IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| JOHN NELSON, § § Plaintiff, § § vs. § § MGM GRAND HOTEL, L.L.C., § MGM GRAND RESORTS, L.L.C., § and MGM MIRAGE, § § Defendants. § | Civil Action No. H-05-294 |

# MEMORANDUM AND ORDER

Defendants have filed a Motion To Dismiss for Lack of Personal Jurisdiction or, Alternatively, Motion To Transfer Venue (Docket Entry No. 3). For the reasons that follow, Defendants' Motion To Dismiss is **GRANTED** and this case is **DISMISSED WITHOUT PREJUDICE**.

## I. Background

Plaintiff, John Nelson, is a resident of Houston, Texas. Defendants MGM Grand Hotel, L.L.C. and MGM Grand Resorts, L.L.C. are limited liability corporations established under the laws of Nevada. They maintain their principal place of business in Nevada. Defendant MGM Mirage is a corporation established under the laws of the State of Delaware and maintains its principal place of business in Las Vegas, Nevada. MGM Grand is an indirect subsidiary of MGM Mirage.[1]

---

[1] Defendants say that MGM Grand is a wholly-owned subsidiary of MGM Resorts, which is a wholly-owned subsidiary of MGM Mirage. Plaintiff does not dispute this. When Defendants refer to MGM

Plaintiff has traveled from Houston to Las Vegas more than 75 times in the last ten years to stay and play at the MGM Grand Casino (the "Casino"). The Casino is owned by MGM Grand Hotel, L.L.C. Plaintiff was well-known to the staff of the Casino. Defendants have always paid for his airfare, food, beverages, accommodations, and many other amenities during the trips. Plaintiff had told Defendants on numerous occasions that he limits his gambling by playing only with guaranteed funds that he deposits with the Casino. Defendants were instructed never to extend Plaintiff credit.

Defendants phoned Plaintiff in January of 2004 to invite him to play at the Casino over Super Bowl weekend. Plaintiff accepted the invitation and won a significant amount of money; he deposited this money into his Casino deposit account. After a couple of days, Plaintiff asked the Casino to transfer some of his winnings to his bank in Houston. Plaintiff had asked the Casino to do so many times before. The Casino successfully wired $125,000 from Plaintiff's deposit account to his Houston account. Then Plaintiff requested that the Casino transfer $235,000 more. Instead of transferring the money as requested, the Casino transferred the money into a separate unknown account. Then Plaintiff was informed that the $235,000 was still available to him for continued playing. Plaintiff subsequently gambled away all of the money.

Plaintiff alleges that Defendants knowingly and intentionally retained possession of his money and failed to execute his wire transfer orders knowing that Plaintiff would play the money. Plaintiff also alleges that Defendants transferred the money from his deposit account to a separate account to ensure that he did not have the amount of money in his account required to be eligible for the minimum 15% cash discount for losses.

---

Grand, it is unclear whether they mean MGM Grand Hotel, L.L.C. or MGM Grand Resorts, L.L.C., or both.

Finally, Plaintiff claims that Defendants denied him "comp" benefits, in violation of Nevada Gaming Commission Regulation 5.170, when they unilaterally placed him on their Self-Limit Access Program in February of 2004. The Program allows patrons to voluntarily self-limit themselves from certain activities and privileges.

Plaintiff brings the following claims for relief: negligence; violations of the Texas Deceptive Trade Practices Act; breach of contract; fraud; negligent misrepresentation; conversion; denial of comp benefits in violation of Nevada Gaming Commission Regulation 5.170; and failure to discount losses. Plaintiff alleges damages of at least $800,000.

## II. Discussion

### A. *Governing Law on Personal Jurisdiction*

In order to exercise personal jurisdiction over a nonresident defendant, the defendant must be amenable to service of process under the State's long-arm statute and the assertion of personal jurisdiction must be consistent with the due process clause of the Fourteenth Amendment. *Electrosource, Inc. v. Horizon Battery Techs., Ltd.*, 176 F.3d 867, 871 (5th Cir. 1999) (citation omitted). Texas's long-arm statute has been interpreted to extend to the limits of due process; therefore, the Court need ensure only that subjecting Defendants to suit in this Court would not offend due process. *Id*. (citation omitted).

Subjecting a non-resident defendant to suit in this Court comports with due process if (1) the defendant has purposefully availed itself of the benefits and protections of the forum state by establishing "minimum contacts" with the forum state; and (2) the exercise of jurisdiction over the defendant does not offend "traditional notions of fair play and

3

substantial justice." *Mink v. AAAA Dev. LLC*, 190 F.3d 333, 336 (5th Cir. 1999) (citing *Latshaw v. Johnson*, 167 F.3d 208, 211 (5th Cir. 1999)) (quoting *Int'l Shoe Co. v. State of Washington*, 326 U.S. 310, 316 (1945)) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). The Due Process Clause therefore requires that nonresident defendants have "fair warning" that their activity might subject them to a foreign court's jurisdiction. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (quoting *Shaffer v. Heitner*, 433 U.S. 186, 218 (1977) (Stevens, J. concurring in judgment)).

Minimum contacts can be established through contacts that give rise to either general or specific jurisdiction. *Mink*, 190 F.3d at 336 (citation omitted). Plaintiff concedes that specific jurisdiction is not at issue in this case. "General jurisdiction exists when a defendant's contacts with the forum state are unrelated to the cause of action but are 'continuous and systematic.'" *Id*. (citations omitted).

Because the Court has not held an evidentiary hearing on Defendants' Motions, the Court must accept Plaintiff's allegations as true and resolve all factual disputes in his favor. *Guidry v. United States Tobacco Co.*, 188 F.3d 619, 625 (5th Cir. 1999).

B. *Parties' Arguments*

In their Motion To Dismiss, Defendants argue that this Court does not have personal jurisdiction over them because: they have never been residents of Texas; they do not maintain an office, mailing address, or telephone number in Texas; they have never maintained a registered agent for service of process in Texas; they do not maintain a place of business in Texas nor do they have any employees working for them in Texas; they do not own any stock in Texas; they do not have bank accounts in Texas; and they have never paid any income or property taxes in Texas.

Plaintiff does not dispute any of the above. Rather, he asserts that Defendants conduct business in Texas by means of their relationship with MGM Mirage Marketing ("MGM MM"), which is a wholly-owned subsidiary corporation of Defendant MGM Mirage. MGM MM has offices in Dallas and Houston, as well as other locations in the U.S. and in other countries. Plaintiff alleges that MGM MM solicits, advertises, markets, and collects gambling debts from Texas residents and provides services to Texas residents on behalf of the hotels and casinos owned by Defendant MGM Mirage. Plaintiff argues that the relationship that exists between MGM MM and Defendant MGM Mirage subjects Defendant MGM Mirage to this Court's jurisdiction pursuant to the Fifth Circuit's decision in *Hargrave v. Fibreboard Corp.*, 710 F.2d 1154 (5th Cir. 1983), or pursuant to the "alter ego" theory of jurisdiction, accepted by Texas state courts. As for the other two Defendants, Plaintiff says that this Court has jurisdiction pursuant to the "single enterprise theory" of jurisdiction. Finally, Plaintiff seems to contend that this Court has personal jurisdiction over MGM Grand Hotel, L.L.C. and MGM Grand Resorts, L.L.C. because their contacts with the State of Texas are continuous and systematic.

C. *Defendants MGM Grand Hotel and MGM Grand Resorts*

1. Continuous and Systematic Contacts Are Lacking

The Court will address Plaintiff's final argument first to determine whether it has jurisdiction over these Defendants irrespective of any relationship they may have with MGM MM. The first problem with Plaintiff's argument is that is that he merges the two limited liability corporations into one and calls them collectively "MGM Grand," without any showing of why this is appropriate. In fact, in his Response, Plaintiff states that

"[a]lthough no witnesses could testify as to what Defendants MGM Grand Hotel, L.L.C. and MGM Grand Resorts, L.L.C. do, based upon the information and documents received by Plaintiff, it appears these entities operate the MGM Grand Hotel and Casino located in Las Vegas, Nevada." While Plaintiff need only establish a prima facie case at this stage, these statements do not give this Court enough information needed to exercise jurisdiction over these Defendants. Plaintiff's jurisdictional allegations also refer to the two Defendants collectively. This is not sufficient because "each defendant's contacts with the forum State must be assessed individually." *Calder v. Jones*, 465 U.S. 783, 790 (1984) (citation omitted).

Notwithstanding this, Defendants' purported contacts with Texas simply are not sufficient to confer general personal jurisdiction over them. First, Plaintiff notes that MGM Grand[2] advertises its casinos in Texas newspapers. However, this practice began in 2005, and this lawsuit was filed in January of 2005. Therefore, it is unclear whether MGM Grand had even begun advertising in Texas when this lawsuit was filed. Plaintiff also presents records of sales calls and visits that MGM Grand representatives made to Texas between 2002 and 2004. These visits do not appear to be extensive enough to confer jurisdiction over these two Defendants. Plaintiff also points to the Hotel & Casino's website, which he contends contains some interactive elements because it allows visitors to make hotel reservations and buy tickets for concerts. However, the Fifth Circuit has said that the sliding scale analysis used to measure an internet site's connections to a forum state is not "well adapted to the general jurisdiction inquiry." *Revell v. Lidov*, 317 F.3d 467, 471 (5th Cir. 2002). Plaintiff also has not shown how

---

[2] When referring to MGM Grand, Plaintiff never explains whether he is referring to MGM Grand Hotel, L.L.C. or MGM Grand Resorts, L.L.C., or both. As explained above, this lack of specificity is fatal to Plaintiff's arguments.

many Texas residents have used the site to make reservations or purchase tickets. Finally, Plaintiff states that the MGM Grand has made numerous phone calls to him over the years to encourage him to visit the Casino. But Plaintiff does not provide any evidence as to how many other people the MGM Grand may have solicited through phone calls to Texas. Though the MGM Grand may have called Plaintiff many times, phone calls to Plaintiff alone do not establish continuous and systematic contacts with Texas, especially since solicitations alone are generally not sufficient to create general jurisdiction over a defendant. Therefore, even in combination, these contacts with Texas are not sufficient to confer jurisdiction over MGM Grand.

2. "Single Enterprise" Theory Fails

Plaintiff also argues that this Court has jurisdiction over the MGM Grand pursuant to the "single enterprise theory" of jurisdiction. Generally this theory is used to assert jurisdiction over a parent based on the acts of a subsidiary. Here, Plaintiff is attempting to assert jurisdiction over two limited liability corporations that are subsidiaries of MGM Mirage because of their relationship with MGM MM, which is also a subsidiary of MGM Mirage. It is unclear how Plaintiff can do so without some showing as to the connections between all of these corporations and MGM Mirage, the parent company. As will be explained later, Plaintiff has not made the requisite showing of a connection between MGM Mirage and MGM MM. Therefore, Plaintiff's single enterprise argument also fails.

3. Factual Predicate

If Plaintiff were to overcome this barrier, he simply has not shown—even after every inference has been given him—that the requisite factors have been met. He has not shown that MGM MM and the MGM Grand share common employees or offices, that the companies have centralized accounting or unclear allocation of profits and losses between corporations[3], or that there have been undocumented transfers of funds between corporations. *El Puerto de Liverpool, S.A. de C.V. v. Servi Mundo Llantero S.A. de C.V.*, 82 S.W.3d 622, 636-37 (Tex. App.-Corpus Christi 2002, Dism. w.o.j.). Therefore, Plaintiff has failed to establish that this Court has jurisdiction over MGM Grand Hotel, L.L.C. and MGM Grand Resorts, L.L.C. pursuant to the "joint enterprise theory" of jurisdiction.

Because all of Plaintiff's arguments as to the MGM Grand fail, this Court does not have jurisdiction over MGM Grand Hotel, L.L.C. and MGM Grand Resorts, L.L.C.

*D. Defendant MGM Mirage*

Plaintiff asserts that this Court has jurisdiction over Defendant MGM Mirage because of its connections to MGM MM.

1. The *Hargrave* Test Is Not Met

First, Plaintiff points to the Fifth Circuit's decision in *Hargrave v. Fibreboard Corp.*, 710 F.2d 1154 (5th Cir. 1983). In that case, the Fifth Circuit held that a close relationship between a parent and a subsidiary may justify a finding that the parent does business in

---

[3] Plaintiff presents MGM Mirage's annual statement as evidence that the three named Defendants and MGM MM have centralized accounting and unclear allocation of profits and losses. However, the evidence is unconvincing. First, it is understandable that the MGM Mirage would present a consolidated financial statement in its annual report. This does not mean that the MGM Mirage does not maintain separate accounts for its subsidiaries. Moreover, there is a chart in the consolidated financial statements that separates out the assets and revenues of the company's subsidiaries from those of the parent, which suggests that the subsidiaries do maintain separate accounting systems.

8

the forum state through the local acts of the subsidiary. The decision sets out a number of factors to be considered. Plaintiff has failed to show that the relationship between MGM Mirage and MGM MM is any different from that of a normal parent/subsidiary relationship. MGM Mirage does own 100% of MGM MM's stock and the two companies do have officers in common; however, these factors are not sufficient to establish an alter ego relationship between two corporations. *Hargrave*, 710 F.2d at 1160 (citation omitted). In addition, as explained previously, Plaintiff has not shown that the two corporations maintain the same accounting system. Furthermore, Defendants have presented the affidavit of Bryan Wright, the Assistant Secretary of MGM MM. He states that MGM MM maintains its own accounting records, separate bank accounts, and payroll records.

Plaintiff also has not shown that MGM Mirage has day-to-day control over the business and operational decisions of MGM MM. Plaintiff attempts to show this level of control by pointing to the fact that MGM MM exists to market MGM Mirage's hotels and casinos and that MGM MM has limited control over the services that they can provide to Texas customers traveling to a MGM Mirage Casino. However, this does not seem to be a greater degree of control than that normally associated with common ownership and directorship, nor does it seem to be the kind of day-to-day control that the *Hargrave* Court had in mind. *Id*. (citation omitted). In addition, Plaintiff mostly points to how different MGM Mirage owned hotels maintain the authority, not MGM Mirage. These hotels are subsidiaries of MGM Mirage, just as MGM MM is. Finally, because MGM MM has offices throughout the United States, as well as in other countries, if this Court were to find that it has personal jurisdiction over MGM Mirage because of the activities

of MGM MM, then MGM Mirage would be subject to the jurisdiction of a countless number of courts around the country.

    2. The "Alter Ego" Test Is Not Met

Plaintiff also argues that this Court has jurisdiction over MGM Mirage based upon the "alter ego" theory of jurisdiction, recognized by Texas courts. This theory is similar to that enunciated by the Fifth Circuit in *Hargrave*. Courts consider many factors; however, not all factors need be present or considered. *El Puerto de Liverpool, S.A. de C.V. v. Servi Mundo Llantero S.A. de C.V.*, 82 S.W.3d 622, 634-36 (Tex.App.-Corpus Christi 2002, Dism. w.o.j.). Many of the factors are the same as the *Hargrave* factors. As for those that are not, Plaintiff has failed to make the requisite showing. For example, Plaintiff attempts to show that MGM MM is undercapitalized by pointing to Defendants' Answers to Plaintiff's Interrogatories, in which it says that MGM Grand pays for its share of MGM MM's operation expenses. The Interrogatory Responses say nothing about MGM Mirage financing MGM MM. Plaintiff also has not shown whether MGM Mirage and MGM MM file consolidated tax returns; whether they have separate meetings of shareholders and directors; and whether an officer or director of one corporation is permitted to determine the policies of another. Mr. Wright's affidavit states that MGM MM files its own tax returns. It is true that MGM MM exists solely to further the interests of MGM Mirage and that those with whom MGM MM comes into contract are not apprised of the separate identity of the two corporations. However, on the whole, the Court finds that Plaintiff has not established that this Court has jurisdiction over MGM Mirage based on the alter ego theory.

For the foregoing reasons, this Court does not have personal jurisdiction over Defendant MGM Mirage.

### III. Conclusion

To summarize Plaintiff's argument, he complains of the actions of a casino which is owned by an indirect subsidiary of a parent. No wrongdoing is alleged by any other subsidiary or the parent. Yet, Plaintiff believes that the conduct of a subsidiary that has not been sued is sufficient to confer jurisdiction not only over the parent, but also over two sister subsidiaries. There may be good reason for the case law so to hold. But, at present, it does not.

Because this Court does not have jurisdiction over any of the named Defendants, Defendants' Motion To Dismiss is **GRANTED** and this case is **DISMISSED WITHOUT PREJUDICE**.

IT IS SO ORDERED.

SIGNED this 12th day of August, 2005.

        KEITH P. ELLISON
        UNITED STATES DISTRICT JUDGE

**TO INSURE PROPER NOTICE, EACH PARTY WHO RECEIVES THIS ORDER SHALL FORWARD A COPY OF IT TO EVERY OTHER PARTY AND AFFECTED NON-PARTY EVEN THOUGH THEY MAY HAVE BEEN SENT ONE BY THE COURT.**